2022R00393 NRL

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF A NIGHT OWL SECURITY CAMERA SYSTEM DVR SEIZED FROM SHANE E. HALL'S RESIDENCE ON OCTOBER 20, 2022, THAT IS CURRENTLY LOCATED AT THE ATF FIELD OFFICE EVIDENCE LOCKER IN COLUMBUS, OHIO** | **CASE NO.** __2:23-mj-287__<br><br>**FILED UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Cole D. Benner, Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, depose and state the following:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device described more fully in Attachment A (the "**SUBJECT DEVICE**")—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the ATF and have been so employed since March 2020. I have attended formal training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I completed the Criminal Investigator Training Program.  I also attended the ATF National Academy in Glynco, Georgia, where I completed Special Agent Basic Training.  I have received training in the enforcement of various criminal statutes enacted in the Gun Control Act of 1968 and in the National Firearms Act of 1934.  I am presently assigned as a Special Agent for the ATF Columbus Field Division, Columbus Group I Field Office.  Under 18 U.S.C. § 3051, I am empowered to enforce the criminal laws of the United States.

1

3.     Prior to becoming a Special Agent with ATF, I attended Otterbein University, where I graduated with a bachelor's degree in History with a minor in Sociology.  I was previously employed as an Officer for the Raleigh Police Department, starting in 2016.  As part of my previous employment, I completed the North Carolina Basic Law Enforcement Training Academy. I also received additional training in Outlaw Motorcycle Gang Investigations.  My duties with the Raleigh Police Department included answering emergency calls for service, locating and arresting fugitives, and conducting drug interdiction investigations.  I was also previously employed as a Sheriff's Deputy for the Forsyth County, North Carolina, Sheriff's Office, starting in 2019. My duties as a Sheriff's Deputy included answering emergency calls for service, serving subjects with civil and criminal processes, and conducting traffic stops related to drug interdiction.

4.     As a Special Agent, I have participated in many federal and state investigations involving the sale, possession, and trafficking of firearms and controlled substances.  Through my participation in these investigations, I have debriefed numerous defendants and witnesses with personal knowledge regarding firearms and/or narcotics trafficking.  I have also conducted physical and electronic surveillance, seized evidence and contraband, executed search warrants, and arrested defendants.  As a result of my training and experience, I am familiar with federal laws surrounding the illegal possession and sale of both firearms and controlled substances.

5.     This affidavit is intended to show that there is sufficient probable cause for the above-described search warrant and does not purport to set forth all my knowledge of, or investigation into, this matter.  The facts and information contained in this affidavit are based on my personal knowledge, my training and experience, my interviews of various witnesses, including law-enforcement personnel who participated in this investigation, and my review of certain records and documents.

## II.  BACKGROUND ON ILLEGAL FIREARM POSSESSION

6.  Federal law generally prohibits individuals who have been convicted of a crime punishable by imprisonment for a term exceeding one year from possessing a firearm or ammunition if the individual knows they have been convicted of such an offense and the firearm or ammunition traveled in or affected interstate or foreign commerce prior to the individual's possession of the item(s).  *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(8).  Federal law also prohibits any individual from possessing a firearm in furtherance of a drug trafficking crime which may be prosecuted in a court of the United States.  *See* 18 U.S.C. § 924(c)(1)(A).

7.  I know based on my training and experience that individuals who possess firearms and ammunition often possess other items commonly used or acquired in connection with the possession of firearms and ammunition.  Some of these items include, but are not limited to, other firearms, firearm parts, additional ammunition, firearm receipts, firearm brochures or owner's manuals, records of sale or acquisition of firearms, firearm magazines, and holsters.

8.  I know that individuals who possess firearms and ammunition as felons or otherwise, often store those firearms and ammunition in their homes or cars, so that the firearms and ammunition are easily accessible.  I also know that firearms are durable and non-perishable goods, which can be expected to remain in the individual's possession for extended periods of time.

## III.  BACKGROUND ON CONTROLLED SUBSTANCES TRAFFICKING

9.  Federal law also generally prohibits the manufacture, distribution, and dispensation of controlled substances—including methamphetamine and cocaine—and the possession with intent to do any of those activities.  *See* 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)-(C).

10.     I know based on my training, knowledge, and experience that individuals who unlawfully distribute controlled substances ("drug traffickers") commonly maintain their tools of the trade—including controlled substances, contraband, proceeds of drug sales, and records and documents related to their drug trafficking—within secure locations inside their residence and/or businesses both for their ready access and to conceal them from law enforcement.

11.     More specifically, I know that drug traffickers commonly maintain both the source of their illicit gains (the controlled substances themselves) and the proceeds of their crimes, in the form of U.S. currency, on-hand to readily maintain and finance their illicit drug business.  I also know that drug traffickers commonly engage in drug transactions at their residences and/or businesses for convenience and security reasons.

12.     I also know based on my training, knowledge, and experience in previous drug investigations that drug traffickers will often use security camera systems to maintain protection over their stash houses, their drugs, their drug proceeds, and themselves and their family members. Maintaining a security camera system at a drug trafficking location allows drug dealers to determine who is approaching their property prior to those individuals making entry.  Security camera systems also allow drug dealers to alert to the present of law-enforcement officers or other unwanted attention on or near their property.

## IV.  IDENTIFICATION OF THE DEVICE TO BE EXAMINED

13.     The property to be searched is a Night Owl Security Camera System DVR (S/N: QEHU GRG3 C5V1), which was recovered from Shane H. Hall's residence during the execution of a federal search warrant at that location on October 20, 2022.  The **SUBJECT DEVICE** is currently stored in the ATF Field Office Evidence Locker in Columbus, Ohio.

## V.  PROBABLE CAUSE FOR THIS SEARCH

14.     As set forth throughout this affidavit, I submit there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) [Distribution/Possession with Intent to Distribute Controlled Substances, including methamphetamine and cocaine], 18 U.S.C. § 924(c)(1)(A) [Possession of a Firearm in Furtherance of a Drug Trafficking Crime], and 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (the "**TARGET OFFENSES**") have been committed by Shane E. Hall, Samantha J. Howard, and other individuals both known and unknown.  Furthermore, I submit there is probable cause to search the **SUBJECT DEVICE** for evidence of those crimes.

15.     In June 2022, I identified Shane E. Hall as a suspect warranting further investigation.  A previously known and reliable ATF Confidential Informant ("CI") notified me that Hall was known to distribute large amounts of narcotics, including methamphetamine.  The CI further notified me that Hall was also often in possession of firearms.  Finally, the CI notified me that Hall possesses firearms and sells narcotics from his residence located at 2511 Lindsay Road, Obetz, Ohio (the "Lindsay Road Residence").

16.     I conducted a query of the National Crime Information Center ("NCIC") and learned that Shane E. Hall has a prior felony conviction from roughly August 12, 2011, for "Felony Drugs: Possess W/Intent to Sell," out of Wayne County, West Virginia.  Given this prior felony conviction, Hall is prohibited by federal law from possessing firearms and ammunition.

17.     Between July 5, 2022, and October 14, 2022, I used a CI to make four different controlled buys of methamphetamine from Hall at his Lindsay Road Residence.  During each controlled buy, Hall sold the CI over 50 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of federal law.  During each controlled buy, Hall made the sale of methamphetamine from the attached garage at his Lindsay Road Residence.

18.     Based on those controlled buys, I applied for and was granted a federal search warrant for the Lindsay Road Residence and any vehicles located on the property to search for evidence of drug trafficking and illegal firearm possession.  (*See* Case No. 22-MJ-696).

19.     On October 20, 2022, at approximately 10:00 a.m., ATF special agents and task force officers, as well as officers from the Obetz Police Department, executed that search warrant at Hall's Lindsay Road Residence.  Members of the entry team first approached the residence on foot.  Prior to their arrival, a task force officer alerted the entry team to the arrival of a Gray Honda Accord bearing Ohio license plate "Sammy Jo" sitting in the driveway – occupied.

20.     Law enforcement personnel secured the sole occupant of the "Sammy Jo" vehicle and later identified her as Samantha J. Howard.  A review of law enforcement records later showed that Howard was then (and still is) serving a term of federal supervised release following her conviction for conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in Southern District of Ohio Case No. 2:19-CR-237.  Howard entered a guilty plea to that charge on October 18, 2020, and she was sentenced to one day of imprisonment minus time served on February 25, 2022.

21.     Howard was asked if she would consent to a search of her vehicle, which was registered in her name, but she declined.  Law enforcement personnel then informed Howard that they would search her vehicle anyway consistent with the term of the search warrant.

22.     The search of Howard's vehicle revealed a pursue on the floorboard that contained 157.357 grams of methamphetamine (roughly 1/3-pound), 27.829 grams of powder cocaine (roughly an ounce), twenty Alprazolam pills, a digital scale, and drug packaging materials.  While searching the vehicle, law enforcement personnel also found Howard's driver's license, bank cards, mail, prescription medication, other personal effects, and what they believe

to be her cell phone, which agents seized and later transported to the ATF Field Office Evidence Locker in Columbus, Ohio, where it currently remains.

23.     Meanwhile, other members of the entry team continued to the front door of the residence, where they encountered several people inside, including Shane E. Hall, his wife, their young child, and another woman who was later identified as a cousin to both Shane E. Hall and Samantha J. Howard.  Law enforcement personnel removed all four individuals from the residence and temporarily detained them while conducting a search of the home.  Agents later learned that Shane E. Hall and Samantha J. Howard are also cousins with one another.

24.     Law enforcement personnel then searched the residence and located 428.574 grams of methamphetamine (roughly one pound), digital scales with suspected drug residue on them, and drug packaging materials inside the attached garage where Hall had previously distributed methamphetamine during the controlled buys described above.  Law enforcement personnel also located three firearms inside the residence (including one in the garage), several of which were loaded at the time.  While searching the home, law enforcement personnel also observed multiple home security cameras mounted on the interior and exterior of the residence, as well as an associated Night Owl Security Camera System DVR (the "**SUBJECT DEVICE**").  Law enforcement personnel seized the **SUBJECT DEVICE** and later transported to the ATF Field Office Evidence Locker in Columbus, Ohio, where it currently remains.

25.     On December 6, 2022, the Grand Jury returned a nine-count indictment against Shane E. Hall and Samantha J. Howard in Southern District of Ohio Case No. 2:22-CR-228. That indictment charged them with various drug trafficking and firearm offenses stemming from this investigation and the search warrant execution at Hall's residence.  As relevant here, Hall was charged with four counts of distributing 50 grams or more of methamphetamine

2022R00393 NRL

(Counts 1-4); one count of possession with intent to distribute 50 grams or more of methamphetamine (Count 5); one count of possession of a firearm in furtherance of a drug trafficking crime (Count 6); and one count of being a felon in possession of a firearm (Count 7).

## VI.  TECHNICAL TERMS

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

27.     Security Camera System:  A security camera system is an integrated system of digital cameras, recording devices, storage media, and accessories that allows a homeowner or business owner to view, record, and save videos as digital files.  Security camera systems use a variety of fixed and removable storage media to store those recorded digital files, typically on a connected DVR, or digital recording device, or associated removable storage medium.  Videos can usually be retrieved by connecting the DVR to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.

28.     Based on my training, experience, and research, and based on what I observed at Shane Hall's residence, I know that the **SUBJECT DEVICE** has the capabilities to serve as a DVR for such a security camera system.

29.     Based on my knowledge, training, and experience, I also know that the **SUBJECT DEVICE** could contain audio and video recordings of drug deals that occurred at Shane Hall's residence; audio and video recordings depicting Shane Hall (or others) in possession of controlled substances; audio and video recordings depicting Shane Hall (or others) unlawfully in possession of firearms; and audio and video recordings showing indicia of occupancy of the residence and indicia of possession of the drugs, firearms, and other contraband located inside.

8

## VII. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30.     Based on my knowledge, training, and experience, I know that security camera systems can store information for long periods of time. This information can sometimes be recovered with forensics tools.

31.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

b.   Forensic evidence on a device can also indicate who has used or controlled the device.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the device was used, the purpose of its use, who used it, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

2022R00393 NRL

32.     *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the electronic device consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

33.     *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VIII.  CONCLUSION

34.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICE** described in Attachment A to seek the items described in Attachment B as evidence of the **TARGET OFFENSES**.

_Cole Benner_

Cole D. Benner, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

This affidavit was sworn to by the Affiant
by telephone after a PDF was transmitted
by email, per Fed. R. Crim. P. 3, 4(d), and 4.1 on
this __3rd__ day of May, 2023.



Elizabeth A. Preston Deavers
**United States Magistrate Judge**

10